UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **ROBINETTE STRUCKEL**, <br><br> Plaintiff, <br><br> v. <br><br> **MACOMB COUNTY, et al.**, <br><br> Defendants. | 2:20-CV-12995-TGB <br><br> **ORDER** <br><br> **DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION TO DISMISS (ECF NOS. 11, 14), AND** <br><br> **DENYING DEFENDANT MCKINNON'S MOTION FOR JUDGMENT ON THE PLEADINGS (ECF NO. 18)** |

In September of 2020, Robinette Struckel was terminated from her position as an at-will probationary morgue specialist with the Macomb County Medical Examiner's Office. Now the Plaintiff in this lawsuit, Struckel, claims that Defendants Macomb County, Daniel Spitz d/b/a Spitz Pathology Group, PLLC (SPG), William Ridella, and Andrew McKinnon—terminated her in retaliation for exercising her First Amendment rights. She alleges violation of her rights under the First Amendment and Michigan's Whistleblower Protection Act (WPA), as well as violation of public policy. ECF No. 13.

Defendants collectively move to dismiss. ECF No. 11; ECF No. 14. Defendant McKinnon also separately moves for judgment on the

1

pleadings, asserting qualified immunity under various federal law doctrines. ECF No. 18.

For the reasons that follow, Defendants' Motion to Dismiss will be **DENIED IN PART** and **GRANTED IN PART**. Additionally, Defendant McKinnon's Motion for Judgment on the Pleadings will be **DENIED**.

## I.    Background

On September 16, 2020, Plaintiff Robinette Struckel began working at the Macomb County Medical Examiner's Office as a probationary[1] Morgue Specialist for what turned out to be a three-day stint. ECF No. 13, PageID.200, ¶ 19. The Macomb County's Morgue Specialist job description states the following under the heading "general summary":

> "[u]nder direction, receives, stores and releases bodies with proper authorized documentation for administrative and legal purposes according to established policy and procedure; prepares, lifts, transports and carries bodies for autopsy; assists in the conduct of autopsies; cleans and maintains areas of the morgue; may perform various clerical duties as assigned; performs related duties as assigned."

ECF No. 13-2, PageID.224.

Morgue Specialists like Plaintiff received day-to-day directions from Defendant Daniel Spitz, a forensic pathologist who is employed by a professional limited liability company (PLLC)

---

[1] In Struckel's employment offer, it states that probationary morgue specialists "[s]erve a probationary period of six (6) months, during which your job performance will be evaluated to determine your ability to successfully perform in this position." *See* ECF No. 1-2, PageID.19.

called "Spitz Pathology Group, PLLC (SPG)." ECF No. 11,
PageID.95, ¶ 2. SPG provides forensic pathology services to the
Macomb County Health Department (MCHD) pursuant to a
contract with Macomb County. ECF No. 11, PageID.95, ¶ 2. SPG's
contract requires it to perform the duties of a Chief Forensic
Pathologist and Forensic Pathologist as set forth under Michigan's
County Medical Examiner's Act at M.C.L. § 52.201, *et seq.* ECF No.
11, PageID.95, ¶ 2.

SPG has two employees: Daniel J. Spitz, M.D., and Mary
Pietrangelo, M.D. ECF No. 11, PageID.95, ¶ 3. Defendant Spitz
performs the responsibilities of the Chief Forensic Pathologist, and
Dr. Pietrangelo is the Forensic Pathologist. ECF No. 11,
PageID.95, ¶ 3. SPG does not directly employ morgue specialists.
ECF No. 11, PageID.95, ¶ 4. SPG employees also do not have the
authority to hire or fire employees working for MCHD, although
they may make recommendations to the hiring committee. ECF
No. 11, PageID.95, ¶ 5. Likewise, per the terms of SPG's contract
with Macomb County, SPG has the authority to "make
recommendations to the Director/Health Officer as indicated
regarding the discipline of staff." ECF No. 13-3, PageID.234, ¶
11(p).

Struckel began her first day on the job on September 16, 2020. ECF No. 13, PageID.198, ¶ 13.[2] On that day, Struckel alleges in her Complaint that neither Dr. Pietrangelo nor Jeff, another morgue specialist, wore N95 respirators while processing a cadaver and conducting a partial autopsy. ECF No. 13, PageID.201, ¶¶ 30-32. Struckel also alleges in her Complaint that this other morgue specialist did not wear a gown or apron while processing a body in preparation for autopsy—all of which Struckel contends are violations of health and safety laws. ECF No. 13, PageID.201, ¶¶ 30-32.

On her second day of work Struckel assisted the other morgue specialist and Dr. Pietrangelo with autopsies. ECF No. 13, PageID.204, ¶ 52. After she was finished with assisting with autopsies, Defendant Spitz asked Struckel if she had any questions. ECF No. 13, PageID.204, ¶ 53. Struckel responded that she did not, but she did express several concerns with him about what she believed to be various violations of health and safety

---

[2] Struckel previously worked in forensic medicine for the Seattle King County Public Health Medical Examiner's Office and the Kitsap County Coroner's Office in Washington State. ECF No. 13, PageID.201, ¶ 24. At her previous job in Washington State, Struckel was also the subject matter expert during National Association of Medical Examiners (NAME), Food & Drug Administration, and American Association of Tissue Banks (AATB) inspections for compliance and accreditation. ECF No. 13, PageID.201, ¶ 25.

laws. ECF No. 13, PageID.204, ¶ 55. Specifically, Struckel cited the following violations of health and safety laws to Defendant Spitz: (a) noncompliance with OSHA requirements regarding Respiratory Fit Testing for N95 respirators; (b) neither she nor technicians had been fit tested for N95 respirators pursuant to a "respiratory fit protection program;" (c) staff wearing contaminated scrubs home from the morgue; (d) lack of radiation monitor badges for X-rays; (e) lack of TB testing for employees; (f) lack of Blood Borne Pathogens training; (g) lack of Sharps safety training; and (h) exposure to dangerous aerosols without appropriate PPE. ECF No. 13, PageID.204-05, ¶ 55. According to Struckel, Defendant Spitz responded that the Medical Examiner's Office had in its possession a supply of tight-fitting goggles and N95 masks "sitting in boxes 'for months' which no one knew how to use." *Id*. at PageID.205.

After Struckel explained the process for "fit testing" N95 masks and the rationale for the various health and safety laws, she alleges that "Spitz sat with his arms crossed and exasperated." *Id*. Spitz also told Plaintiff that she was "overqualified for the position" and that she needed a different job where she could create and enforce policies. *Id*. at PageID.205-06. Spitz added that it was "too late to apply for the Office Manager position, which had been filled." *Id*.

On her third day of work, Struckel alleges that she again told Defendant Spitz about the violations of health and safety laws. ECF No. 13, PageID.206, ¶ 67. Struckel also asserts that upon voicing her concerns for a second time, Defendant Spitz presented as defensive, agitated, and irritated with her. ECF No. 13, PageID.206, ¶ 69. In addition, Struckel contends that it was her clear impression that Defendant Spitz wanted her to quit because of her communications to him about the alleged violations of law at the Medical Examiner's Office. ECF No. 13, PageID.207, ¶ 73. Defendant Spitz also allegedly threw up his hands and told Struckel to speak with Defendant William Ridella, the Director of MCHD, and Gretchen Terebesi, the interim office manager of the Medical Examiner's Office, regarding her concerns because her concerns were outside of his control. ECF No. 13, PageID.207, ¶¶ 72, 74.

On this same day—her third day of work—Struckel emailed Defendant Ridella and reported to him the disparaging comments Defendant Spitz allegedly made towards her. ECF No. 13, PageID.207, ¶ 76. She alleged that his comments pertained to a pending Equal Employment Opportunity Commission (EEOC) investigation. ECF No. 13, PageID.207, ¶ 76. This email also raised violations of health and safety laws she initially brought up with Defendant Spitz. ECF No. 13, PageID.208, ¶ 77.

Struckel alleges that after she sent her email, Defendant Spitz singled her out and refused to allow her to perform autopsies until she was fit tested for a N95 respirator. ECF No. 13, PageID.209, ¶ 80. Struckel also contends that she told Defendant Spitz that she had two fit tested N95 respirators and could safely participate in autopsies, but that he still would not allow her to participate. ECF No. 13, PageID.209, ¶¶ 81, 82.

Struckel subsequently asked Terebesi for instructions and was told she could either do "some random paperwork or go home." ECF No. 13, PageID.209, ¶ 83. As a result, Struckel went home and waited for contact from Defendant Ridella. ECF No. 13, PageID.209, ¶ 84. Additionally, at this time, Struckel also requested paid administrative leave for ninety days to "sort out next steps" which "includes a work environment with proper safety measures in place and focus on employee safety, health and wellbeing at the center of decision making." ECF No. 13, PageID.210, ¶ 86.

On Sunday, September 20, 2021, Defendant Ridella forwarded Struckel's email to Defendant Andrew McKinnon, the Director of Human Resources and Labor Relations for Macomb County. ECF No. 13, PageID.209, ¶ 79. On this same day, Struckel received a response from Defendant Ridella regarding her email with Defendant McKinnon copied, which stated: "Thank you for

your email. I agree that you are to not report to the Medical Examiner's Office on Monday. I will follow up with you on Monday. Appreciate if you can acknowledge receipt of this email." ECF No. 13, PageID.210, ¶ 87.  Struckel responded with confirmation. ECF No. 13, PageID.210, ¶ 87.

On Monday, September 21, 2020, Struckel received an email from Defendant Ridella with Defendant McKinnon copied, which stated "It has been concluded that you have not successfully completed your probationary period. Therefore, your employment with Macomb County is terminated, effective September 21, 2020." ECF No. 13, PageID.210, ¶ 88. Defendant Ridella also directed Struckel to contact Defendant McKinnon with any questions— which she did by emailing Defendant McKinnon to discuss the reasons for her discharge. ECF No. 13, PageID.210-11, ¶¶ 89, 90. Later that same day, Defendant McKinnon responded to Struckel via email explaining that her termination letter was "our standard letter we send when individuals do not successfully complete their probationary period" and offered no further comment. ECF No. 13, PageID.211, ¶ 91.

On September 22, 2020, Struckel had a discussion about her termination with Peter Jensen, Macomb County's assistant corporation counsel who allegedly told her she was "not a good fit and was an at will employee." ECF No. 13, PageID.211, ¶ 92.

As a result of the foregoing events, Struckel filed a Complaint on November 6, 2020, which asserted three distinct causes of action against Defendants Macomb County, Spitz, Ridella, and McKinnon: (1) First Amendment retaliation, (2) violation of Michigan's Whistleblower Protection Act (WPA), and (3) violation of Michigan public policy. ECF No. 1.

On December 16, 2020, Defendant Spitz filed a Motion to Dismiss all three claims against him. ECF No. 11. Likewise, on December 28, 2020, Defendants Macomb County, Ridella, and McKinnon filed a concurrence to Spitz's Motion to Dismiss on the same grounds that Spitz made in his Motion to Dismiss. ECF No. 14. Additionally, McKinnon filed a separate Motion for Judgment on the Pleadings on January 7, 2021. ECF No. 18. The matter is fully briefed. On August 3, 2021, the Court heard oral argument.

Currently, before this Court is the Defendants' joint Motion to Dismiss the First Amendment retaliation, violation of Michigan's WPA, and violation of Michigan public policy claims. Also before this Court is Defendant McKinnon's separate Motion for Judgment on the Pleadings.

## II.   Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits dismissal of a lawsuit where the defendant establishes the plaintiff's "failure to state a claim upon which relief can be granted." *Jones v City*

*of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008). Consideration of a Rule 12(b)(6) motion is confined to the pleadings. *Id.* In evaluating the motion, courts "must construe the complaint in the light most favorable to the plaintiff, accept all well-pled factual allegations as true and determine whether the plaintiff undoubtedly can prove no set of facts consistent with their allegations that would entitle them to relief." *LULAC v Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (quoiting *Kottmyer v Maas*, 436 F.3d 684, 688 (6th Cir. 2006)).

"For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (quoting *Southern Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 479 F.2d 478, 480 (6th Cir.1973)). Moreover, a motion brought under Rule 12(c) of the Federal Rules of Civil Procedure is appropriately granted "when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008) (quoting *JPMorgan Chase Bank, N.A.*, 510 F.3d at 582).

### III.   Discussion

### a. Plaintiff has sufficiently plead a prima facie case of First Amendment retaliation.

Defendants collectively contend that Struckel's speech was made pursuant to her official duties rather than as a private citizen. ECF No. 11, PageID.114; ECF No. 14, PageID.260.[3] In particular, Defendants assert that none of Struckel's statements were made to the public, disseminated to the public, or concerned anything but work-related matters. ECF No. 11, PageID.114.

In Defendant McKinnon's separate Motion for Judgment on the Pleadings, he also contends that he is entitled to qualified immunity against Struckel's First Amendment retaliation claim. ECF No. 18, PageID.371. Particularly, McKinnon contends Struckel's Amended Complaint fails to plead any factual basis demonstrating his personal involvement in the asserted rights violations. ECF No. 18, PageID.371. As a result, McKinnon asserts that as a government employee, qualified immunity shields him from liability as to Struckel's First Amendment retaliation claim. ECF No. 18, PageID.371

Struckel, on the other hand, responds that she commented on matters of significant public concern as a private citizen when she spoke

---

[3] Defendants Macomb County, Ridella, and McKinnon, request dismissal on the same grounds that Defendant Spitz advances in his Motion to Dismiss. Specifically, Defendants make this assertion in ECF No. 14 in their "brief in support of concurrence in co-defendant Spitz' motion to dismiss."

out on the following issues: Defendant Spitz's disdain for employee civil rights; and violations of health and safety laws, rules, regulations, and policies which exposed employees, their families, members of the public who came into contact with the Medical Examiner's Office, and the community at large to COVID-19. ECF No. 13, PageID.214.

Further, Struckel contends that it was not part of her official or ordinary duties as a morgue specialist to evaluate, assess, critique, oversee, implement, educate, develop or monitor the Medical Examiner's Office's compliance with federal and/or state health and safety laws, regulations, Executive Orders, CDC guidelines or policies. ECF No. 13, PageID.214. Instead, Struckel argues that she was a technician on her probationary period who performed ministerial and clerical functions, and that she was not a manager, administrator or policy maker like each individual Defendant. ECF No. 13, PageID.214. In other words, because her duties as a morgue specialist did not involve overseeing the enforcement of various workplace regulations, Struckel asserts that her speech was made as a private citizen rather than as part of her official duties as a morgue specialist.

To establish a prima facie case of First Amendment retaliation, Struckel must show three elements: first, that she engaged in constitutionally protected speech or conduct; second, that Defendant(s) took an adverse action against her that would deter a person of ordinary firmness from continuing to engage in that speech; and third, that a

causal connection exists between the protected speech and the adverse employment action. *Benison v. Ross*, 765 F.3d 649, 658 (6th Cir. 2014).

### i. Struckel engaged in constitutionally protected speech when she reported violations of health and safety laws outside of the Medical Examiner's Office.

Struckel contends that her essential functions and responsibilities as a morgue specialist did not include reporting violations of health and safety laws, rules, regulations, and policies. ECF No. 13, PageID.214, ¶ 104. Instead, Struckel contends that she was a technician who performed ministerial and clerical functions, and that she was not a manager, administrator, or policy maker like each individual Defendant. ECF No. 13, PageID.214, ¶ 105.

Defendants, on the other hand, collectively assert that Struckel's speech was made pursuant to her official responsibilities as a morgue specialist. ECF No. 11, PageID.114; ECF No. 14, PageID.260.

The Supreme Court has established a three-prong test for evaluating whether a public employee's speech is constitutionally protected. A plaintiff must show: (1) that her speech was made as a private citizen, rather than pursuant to her official duties; (2) that her speech involved a matter of public concern; and (3) that her interest as a citizen in speaking on the matter outweighed the state's interest, as an employer, in promoting the efficiency of the public services it performs through its employees. *Garcetti v. Ceballos,* 547 U.S. 410 417–18, 126

S.Ct. 1951, 164 L.Ed.2d 689 (2006). Furthermore, "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes." *Id*. at 421.

*Garcetti* involved a deputy district attorney who filed a § 1983 complaint against the county and supervisors at the district attorneys' office. 547 U.S. 410, 126 S. Ct. 1951 (2006). The complaint alleged that he was subject to adverse employment actions in retaliation for engaging in protected speech for writing a deposition memorandum in which he recommended dismissal of a case on the basis of purported governmental misconduct.[4] *Id*. The Supreme Court reasoned that the plaintiff district attorney wrote this deposition memorandum because that was, in part, what he was employed to do. *Id*. at 421. The Supreme Court further reasoned that it was immaterial whether plaintiff experienced some personal gratification from writing this deposition memorandum—his First Amendment rights do not depend on his job satisfaction. *Id*.

Further, when an employee is merely performing their job duties, there is no "[n]eed for a delicate balancing of the competing interests surrounding the speech and its consequences. To hold otherwise would be to demand permanent judicial intervention in the conduct of

---

[4] The alleged retaliatory conduct against the plaintiff district attorney in *Garcetti* included reassignment from his calendar deputy position, transfer to another courthouse, and denial of a promotion.

governmental operations to a degree inconsistent with sound principles of federalism and the separation of powers." *Id.* at 423.

*Garcetti* hinged upon the fact that the plaintiff wrote the deposition memorandum pursuant to his official duties as deputy district attorney. *Id.* Consequently, the Supreme Court determined that restricting the plaintiff's speech as it pertains to his professional responsibilities did not violate any liberties the plaintiff may have enjoyed as a private citizen. *Id.* at 421-22. Instead, this demonstrated the exercise of employer control over what the employer itself has commissioned or created. *Id.* at 422.

In *Lane*, the Supreme Court considered *Garcetti* and refined the meaning of "[w]ithin the scope of an employee's duties." *Lane v. Franks*, 573 U.S. 228, 240, 134 S. Ct. 2369, 2379, 189 L. Ed. 2d 312 (2014). Relying on *Garcetti*, the Supreme Court in *Lane* held that "[t]he critical question under *Garcetti* is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Id.* Speech that merely concerns those duties do not fall "[w]ithin the scope of an employee's duties." *Id.*

Moreover, simply because "a citizen's speech concerns information acquired by virtue of his public employment does not transform that speech into employee—rather than citizen—speech." *Id.* The Supreme Court notes that this distinction bears emphasis because "[o]ur precedents dating back to *Pickering* have recognized that speech by public employees on subject matter related to their employment holds

15

special value precisely because those employees gain knowledge of matters of public concern through their employment." *Id.*

The Sixth Circuit has also identified a number of factors that are relevant to making the determination of whether a public employee's statements were made pursuant to official duties. Such factors include "the impetus for her speech, the setting of her speech, the speech's audience, and its general subject matter." *Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 540 (6th Cir. 2012) (quoting *Weisbarth v. Geauga Park Dist.,* 499 F.3d 538, 546 (6th Cir. 2007)). Further relevant considerations in determining whether a public employee's statements were made merely pursuant to her professional duties, such that the employee was not speaking as a citizen for First Amendment purposes, include: (1) whether the statements were made to individuals up the chain of command, and (2) whether the content of the speech is nothing more than the quintessential employee beef, such as management has acted incompetently. *Id.*

In *Handy-Clay*, the Sixth Circuit held that the plaintiff sufficiently alleged that she spoke as a concerned private citizen when she was addressing public corruption and that her statements were not made pursuant to her professional duties. *Handy-Clay*, 695 F.3d at 543. The plaintiff in *Handy-Clay* was a public records coordinator who brought a § 1983 claim against city defendants who terminated her for making allegations about corruption and mismanagement of public funds. *Id.* at

16

535-36. The court reasoned that the plaintiff's comments were "extraordinary rather than everyday communications," and that her conversations with individuals outside her department—not just her immediate supervisor—were clearly outside the chain of command, and therefore not part of her official duties. *Id.* at 543. Specifically, the plaintiff spoke to an individual in the city payroll department, a human resources employee, and a city councilman. *Id.*

In the Sixth Circuit, a public employee's speech is protected when her ordinary job duties do not consist of reporting employee misconduct, and she speaks outside the chain of command. *Buddenberg v. Weisdack*, 939 F.3d 732, 740 (6th Cir. 2019). In *Buddenberg*, the Sixth Circuit affirmed the lower court's decision that the plaintiff sufficiently plead that she engaged in speech as a private citizen to establish a First Amendment retaliation claim. *Id.* The plaintiff was a fiscal coordinator for a county health district and alleged that she was retaliated against by her supervisor for reporting ethical violations she observed. *Id.* at 735. Specifically, after being snubbed by her supervisor in regard to a sex-based pay disparity issue she brought to his attention, she reported several ethical quandaries her supervisor was entangled with to the county Board of Health. *Id.* at 736. Within forty-eight hours of her report to the Board, the plaintiff's work schedule was changed. *Id.* The plaintiff also filed a charge of retaliation with the Equal Employment Opportunity Commission ("EEOC"). *Id.* at 737. Four days after she filed her EEOC

17

complaint, the plaintiff's supervisor issued a "Notice of Proposed Disciplinary Action" (Notice) against her. *Id*.

On this record, the Sixth Circuit determined that the plaintiff's speech was not within her ordinary job responsibilities. *Id*. at 740. The appellate court pointed out that the plaintiff went outside her chain of command by bringing the issue to the attention of the Board. *Id*.

In this case, as with the plaintiffs in *Handy-Clay* and *Buddenberg*, Struckel has plausibly pled that as a public employee her speech was protected under the First Amendment. This is because Struckel's essential functions and responsibilities as a morgue specialist on probation did not include reporting violations of health and safety laws, rules, regulations, and policies.[5] For instance, when Struckel raised her concerns about workplace safety violations, Defendant Spitz responded that her concerns did not fall within her official duties and suggested she apply for a job elsewhere. ECF No. 13, PageID.207, ¶ 72.

Further, Struckel did not simply communicate her concerns up the chain of command at the Macomb County Medical Examiner's Office. Similar to *Handy-Clay* and *Buddenberg*, Struckel communicated her concerns to individuals outside of her department. Specifically, Struckel sent an email communicating her concerns to Defendant Ridella, the Director of Macomb County Public Health, who then forwarded this

---

[5] *See* Macomb County's Morgue Specialist job description at ECF No. 13-2, PageID.224-25.

email to Defendant McKinnon, the Macomb County Director of Human Resources and Labor Relations. ECF No. 13, PageID.209, ¶ 79.

Although Struckel initially voiced her concerns with Defendant Spitz, and it is not entirely clear as to whether or not Spitz is in her chain of command because of his independent contractor status,[6] Struckel's allegations in her Amended Complaint show that she communicated her concerns outside of the Medical Examiner's Office. ECF No. 13, PageID.207, ¶ 76. As such, Struckel's speech was not merely communicated up the chain of command—if at all. In sum, Struckel's speech was protected because its substance did not fall within her official duties as a probationary morgue specialist and she communicated it beyond her official supervisors.

Next, Struckel contends that she was commenting on matters of significant public concern as a private citizen when she spoke out about Defendant Spitz's disdain for employee civil rights as well as violations of health and safety laws, rules, regulations, and policies which exposed employees, their families, members of the public who came into contact with the Medical Examiner's Office, and the community at large to COVID-19. ECF No. 13, PageID.213, ¶ 103.

---

[6] As further explained in this Order, Defendant Spitz will be deemed as as Struckel's employer for purposes of a First Amendment retaliation claim because there is evidence in the record suggesting that Defendant Spitz has a role in influencing critical hiring and firing decisions, and that he played a role in terminating Struckel.

Defendants neglect to address prong two of the three-prong "constitutionally protected speech" test because they collectively assert that Plaintiff's Complaint fails on prong one. Because Defendants do not address these elements, it is deemed waived. Nevertheless, Plaintiff has plausibly alleged that her speech related to matters of public concern.

Whether or not a plaintiff's speech touches on a matter of public concern is a question of law. *Hughes v. Region VII Area Agency on Aging,* 542 F.3d 169, 180 (6th Cir. 2008). In making this determination, the Sixth Circuit looks to the "content, form, and context of a given statement, as revealed by the whole record." *Rodgers v. Banks,* 344 F.3d 587, 596 (6th Cir. 2003) (quoting *Connick,* 461 U.S. at 147–48, 103 S.Ct. 1684)).

The Supreme Court has provided that speech touching on public concern includes speech on "any matter of political, social, or other concern to the community." *Handy-Clay*, 695 F.3d at 543 (quoting *Connick,* 461 U.S. at 146, 103 S.Ct. 1684). More specifically, the Supreme Court has identified statements seeking to "bring to light actual or potential wrongdoing or breach of public trust" as speech that would involve matters of public concern. *Id*. (quoting *Connick*, 461 U.S. at 148, 103 S.Ct. 1684). Likewise, "[e]xposing governmental inefficiency and misconduct is a matter of considerable significance." *Garcetti*, 547 U.S. at 425, 126 S.Ct. 1951. The Sixth Circuit has also gone as far as saying that "public interest is near its zenith when ensuring that public

organizations are being operated in accordance with the law, when exposing graft and corruption, and when seeing that public funds are not purloined or wasted." *Handy-Clay*, 695 F.3d at 543 (quoting *Chappel v. Montgomery Cnty. Fire Prot. Dist. No. 1,* 131 F.3d 564, 576 (6th Cir.1997)).

In this case, Struckel's speech was aimed at bringing to light public safety issues, potential wrongdoing and violation of public trust by the Macomb County Medical Examiner's Office and SPG. Specifically, in Struckel's email to Defendant Ridella, she laid out several alleged violations of laws, rules, regulations, and policies concerning workplace health and safety. ECF No. 13, PageID.208-09, ¶ 78. This, in accordance with *Connick*, was sufficient—in and of itself—to establish a matter of public concern.

Struckel contends that her concerns regarding violations of health and safety laws by the Medical Examiner's Office and SPG outweighed the state's interest, as an employer, in promoting the efficiency of the public services it performs through its employees. Defendants offer nothing to the contrary, as they do not dispute this prong.

If it is established that an employee's speech was made as a "citizen" on a matter of public concern, *Pickering* then requires a court to balance the interests of the public employee "as a citizen, in commenting upon matters of public concern, and the interest of the State, as an employer, in promoting the efficiency of the public services it performs

21

through its employees." *Handy-Clay*, 695 F.3d at 544 (quoting *Pickering v. Board of Education,* 391 U.S. 563, 568 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968)). Consequently, at this stage, the burden is on the defendant to proffer legitimate grounds for the alleged retaliatory action at issue. *Id.* (citing *Hughes*, 542 F.3d at 180).

This is not a matter of balancing a citizen's interest in disclosing sensitive government information against a reasonable difference of opinion in how to efficiently operate a governmental agency. On balance there is a strong public interest in ensuring that morgue specialists and forensic pathologists follow proper safety protocols—especially in the midst of the COVID-19 global pandemic. Indeed, taking the Complaint in the light most favorable to Plaintiff, there is little if any state interest in ensuring that public employees working in a medical field are able to disregard health and safety protocols and procedures without so much as a rational basis for doing so.

As such, Struckel's Complaint adequately pleads that her speech involved a matter of public concern that outweighs Macomb County's interest, as an employer, in promoting the efficiency of the public services it performs through its employees.

### b. Defendant McKinnon is not entitled to qualified immunity.

In Defendant McKinnon's separate Motion for Judgment on the Pleadings, he asserts that the claims against him should be dismissed in

part because he is entitled to qualified immunity as a public employee. ECF No. 18, PageID.371. The Sixth Circuit applies a two-step inquiry to determine whether a defendant is entitled to qualified immunity, which considers (1) whether the defendant violated a constitutional right; and (2) whether that right was clearly established. *Hensley v. Gassman*, 693 F.3d 681, 687 (6th Cir. 2012).

Struckel contends that McKinnon violated her constitutionally protected speech when he became involved in her termination after she voiced her concerns regarding violations of public health laws and regulations. ECF No. 13, PageID.212, ¶ 96. McKinnon, on the other hand, counters that all he did was communicate to Struckel that she was terminated and that he gave Struckel a brief reason why they came to that decision. ECF No. 18, PageID.368-69.

"[I]t is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity. Although 'entitle[ment] to qualified immunity is a threshold question to be resolved at the earliest possible point, that point is usually summary judgment and not dismissal under Rule 12." *Wesley v. Campbell*, 779 F.3d 421, 433-34 (6th Cir. 2015) (quoting *Vakilian v. Shaw*, 335 F.3d 509, 516 (6th Cir. 2003)). Consequently, in this case, there is a presumption against granting a 12(b)(6) motion on the basis of qualified immunity.

Struckel also alleges that her speech was made in connection with matters outside the scope of her duties as a public employee and that it

related to matters of public concern. ECF No. 13, PageID.213-14, ¶¶ 103, 104. When public employees speak on "matters of public concern" and do so separate and apart from their responsibilities as public employees, the First Amendment protects that speech from the defense of qualified immunity. *Garceau v. City of Flint*, 572 Fed. App'x 369, 371 (6th Cir. 2014).

In *Garceau*, after the police officer plaintiffs filed a lawsuit against the police chief and captain defendants, they began to experience "increase[ed] scrutiny" and "pretextual discipline" from the defendants. *Id.* at 370. The trial court determined that the police chief and captain defendants' motion to dismiss based on qualified immunity should be denied. *Id.* at 371.

On appeal, the police chief and captain defendants claimed that qualified immunity sheltered them from the First Amendment retaliation claim. *Id.* They argued that the filing of the lawsuit at hand did not fulfill the protected activity requirement of a First Amendment retaliation claim. *Id.* In other words, defendants argued that their conduct did not violate the plaintiffs' constitutional or statutory rights. The Sixth Circuit disagreed. *Id.* Because the plaintiffs' complaint sufficiently pled that the City of Flint Police Department discriminated against them on the basis of race, their lawsuit pertained to a matter of public concern and was rightfully a protected activity. In retaliating

24

against plaintiffs for bringing the suit, defendants were not entitled to a defense of qualified immunity. *Id.*

In this case, as with *Garceau,* Defendant McKinnon is likely not entitled to a defense of qualified immunity against Struckel's First Amendment retaliation claim. Struckel's email clearly laid out violations of health and safety laws—matters of public concern. Plaintiff's Complaint raises the plausible inference that, as the Macomb County Director of Human Resources and Labor Relations, Defendant McKinnon would likely have been involved in the decision-making process to terminate Struckel after he received her email. When there is a violation of a clearly established constitutional right, qualified immunity is not available as a defense. In this instance, Plaintiff had a constitutional right to engage in protected speech at the workplace without experiencing retaliation.

Next, Struckel asserts that her First Amendment free speech rights to report violations of health, safety and civil rights laws within the workplace were clearly established. ECF No. 13, PageID.213, ¶ 114. Defendant McKinnon does not argue whether or not Struckel's First Amendment free speech rights were clearly established. Rather, he simply asserts he is entitled to qualified immunity because Struckel's Complaint fails to plead any factual basis demonstrating his personal involvement in the asserted rights violation. ECF No. 18, PageID.371.

The Sixth Circuit has long held that a public employer may not retaliate against an employee for her exercise of constitutionally protected speech. *See v. City of Elyria*, 502 F.3d 484, 495 (6th Cir. 2007) ("[A] public employee's right to speak on matters of public concern without facing improper government retaliation [is] settled."); *Chappel*, 131 F.3d at 580 ("All public officials have been charged with knowing that public employees may not be disciplined for engaging in speech on matters of public concern…"). Further, an employer firing an employee for revealing corrupt practices is a violation of the employee's First Amendment rights. *Handy-Clay*, 695 F.3d at 535-36.

### i. Defendants engaged in an adverse employment action against Plaintiff through their collective involvement in her termination with the Medical Examiner's Office.

Struckel asserts that being terminated was an adverse employment action taken against her. ECF No. 13, PageID.215, ¶ 111. Defendants do not dispute this, preferring to maintain that she did not engage in constitutionally protected speech.

The term "adverse action" in the employment context traditionally refers to actions such as "discharge, demotions, refusal to fire, nonrenewal of contracts, and failure to promote." *Fritz,* 592 F.3d at 724 (quoting *Thaddeus–X v. Blatter,* 175 F.3d 378, 396 (6th Cir.1999)). The Sixth Circuit has also held that any action that would deter a person of ordinary firmness from exercising protected conduct will suffice as an

adverse action—which may include harassment or publicizing facts damaging to a person's reputation. *Thaddeus–X,* 175 F.3d at 397.

In this case, Struckel has plausibly alleged that an adverse action was taken against her that would deter a person of ordinary firmness from continuing to engage in the protected conduct. Termination of employment constitutes an adverse action. Specifically, terminating Struckel after she voiced her concerns regarding  public health violations and safety standards would likely dissuade her or others from engaging in the same sort of activity.

> ### ii. A causal connection exists between Plaintiff's protected speech and her termination with the Medical Examiner's Office.

Struckel next contends that Defendant Spitz was her supervisor at the Macomb County Medical Examiner's Office and influenced the decision to terminate her employment with the Office. ECF No. 13, PageID.214, ¶ 108. In response, Defendant Spitz contends that he was not Struckel's employer because he was an independent contractor providing services to the County. Thus, Defendant Spitz claims, he was legally incapable of firing Struckel. ECF No.11, PageID.115.

In this case, although Defendant Spitz did not have the final authority to terminate Struckel, Plaintiff alleges that he could make recommendations to the decision maker. Furthermore, under his contract with Macomb County, Defendant Spitz does have the ability to influence decisions to discipline staff members.

Although the record at this stage is not altogether clear regarding the role Defendant Spitz in fact played in the decision to terminate Struckel, at the Rule 12(b)(6) stage, Plaintiff's allegations must be taken as true. And here, the realities of Defendant Spitz's position as head of the day-to-day operations of the facility, his personal interactions with Struckel, the fact that she made some complaints directly about him, coupled with the temporal proximity between when Struckel engaged in protected speech and her termination—these facts raise a plausible inference that Defendant Spitz played *some* role in Macomb County's decision to terminate Struckel in retaliation for engaging in protected speech. At the very least, the Complaint's allegations are sufficient to allow discovery on this question. As such, all three elements required to establish a First Amendment retaliation claim against Defendant Spitz are met.

Yet, in Defendant Spitz's supplemental brief,[7] he argues that he is not liable as an employer because he had no authority to, nor did he participate in initiating Struckel's termination. ECF No. 26, PageID.423. Specifically, Defendant Spitz argues that Struckel is attempting to apply

---

[7] At oral argument, the Court granted leave for the parties to file supplemental briefing on the question of liability when a group of authority figures within the workplace arrive at a decision to terminate an individual. In other words, whether Defendant Spitz may be held liable for retaliation if there is some evidence in the record suggesting that he may have played a role in terminating Struckel, even though he was not the final decision maker.

the "cat's paw" theory. ECF No. 26, PageID.424. The "cat's paw" theory applies to "the circumstances under which an employer may be held liable for employment discrimination based on the discriminatory animus of an employee who influenced, but did not make, the ultimate employment decision." *Staub v. Proctor Hosp.*, 562 U.S. 411, 413, 131 S. Ct. 1186, 1189, 179 L. Ed. 2d 144 (2011). Defendant Spitz contends that because Struckel has sued her employer directly—Macomb County—the "cat's paw" theory adds nothing to her claim. ECF No. 26, PageID.425.

Here, the "cat's paw" theory is a red herring and inapt to the facts. *See Davis v. Omni-Care, Inc.*, 482 Fed. App'x 102, 109 (6th Cir. 2012) (noting that the cat's paw theory of liability "involves circumstances where a seemingly unbiased decisionmaker makes an adverse employment decision that was in part motivated by a biased subordinate"). Here, the record shows that Defendant Spitz had the authority to make recommendations about disciplining employees. ECF No. 13-3, PageID.234, ¶ 11(p).[8] Plaintiff's Complaint holds Defendant Spitz individually liable for his own retaliatory conduct, including "telling an employee to find new employment, refusing to allow her work, and discharge." ECF No. 27, PageID.437. Put another way, Defendant

---

[8] Plaintiff Struckel has also submitted a Declaration stating that Gretchen Terebesi, Defendant Spitz's Interim Office Manager, attended her hiring interview. Although Defendant Spitz did not personally attend the interview, he was nevertheless involved in the process through his agent, Terebesi. *See* ECF No. 27-1, PageID.444-45.

Spitz did not even need to be the decision-maker in terminating Struckel in order to be held liable for violating her First Amendment rights. It was enough that he engaged in some adverse employment actions as a response to her protected speech. *Id*. While it may be unclear the extent to which Defendant Spitz played an active role in Struckel's termination, at this stage of the litigation—Struckel's allegations must be taken as true, and those allegations provide a theory of liability based on his actions.

Defendant Spitz argues that Struckel has not alleged any specific act by him that would be actionable, nor that her conversations with him rise to constitutionally protected speech. ECF No. 26, PageID.427. He reiterates in his supplemental brief that Struckel has not sufficiently stated a claim for First Amendment Retaliation. ECF No. 26, PageID.427.

Struckel contends that after she sent her emails regarding violations of health and safety laws, Defendant Spitz began to single her out. ECF No. 13, PageID.209, ¶ 80. Specifically, he refused to allow her to perform autopsies until she—and only she—was fit tested for a N95 respirator. ECF No. 13, PageID.209, ¶ 80. Even when Struckel told Defendant Spitz she had two fit tested N95's and could safely participate in the autopsies, ECF No. 13, PageID.209, ¶ 81, he refused to allow her to participate. ECF No. 13, PageID.209, ¶ 82. Subsequently, after two tense days, Struckel received an email that she was terminated for not

30

successfully completing her probationary period. ECF No. 13, PageID.210, ¶ 88.

According to Struckel's Complaint, Defendant Spitz wanted Struckel to quit because of the comments she made regarding violations of health and safety laws. ECF No. 13, PageID.207, ¶ 73. Furthermore, Spitz's position as the head of SPG, the tense interactions between Struckel and Spitz following Struckel's comments, and her termination shortly thereafter raise the more-than-plausible inference that Spitz played some role in Macomb County's decision to terminate her in retaliation for her speech.

Struckel also asserts that Defendant McKinnon knew about her email that raised concerns about violations of health and safety laws. ECF No. 13, PageID.209, ¶ 85. This is because Defendant Ridella forwarded her email to Defendant McKinnon on September 20, 2020, one day before she was terminated. ECF No. 13, PageID.209, ¶¶ 79, 88.Yet, Defendant McKinnon asserts that all he did was communicate to Struckel that she was terminated and that he gave Struckel a brief reason why they came to that decision. ECF No. 18, PageID.368-69.

Nonetheless, "knowing" about protected speech as a human resources director, and then making an adverse employment action against the employee who engaged in the protected speech, is enough to establish a causal connection under a First Amendment retaliation claim.

31

*Hudson v. City of Highland Park, Michigan*, 943 F.3d 792, 798-99 (6th Cir. 2019).

In *Hudson*, the Sixth Circuit affirmed the trial court's decision to grant judgment on the pleadings in favor of the defendant Highland Park human resources director regarding a First Amendment retaliation claim. *Id.* This was despite the fact that the plaintiff firefighter's complaint placed the human resources director in the firehouse when the plaintiff's protected speech occurred. *Id.* at 798. The reason the Sixth Circuit affirmed on this issue was because the plaintiff's complaint made no allegations that the human resources director knew about the plaintiff's protected speech. *Id.* Stated differently, the Sixth Circuit reasoned that the plaintiff's complaint was not enough to make out a plausible case that the human resources director fired him because of his speech. *Id.* at 798-99.

In this case, unlike the defendant in *Hudson*, Defendant McKinnon received Struckel's email that contained the protected speech at issue on September 20, 2020. ECF No. 13, PageID.209, ¶ 79. Defendant McKinnon was thus advised of Struckel's protected speech. Further, after receiving this email from Defendant Ridella, Defendant McKinnon was then copied on an email sent by Defendant Ridella on September 21, 2020, that informed Struckel of her termination. ECF No. 13, PageID.210, ¶ 88. He was thus aware of her speech and of the alleged retaliation for that speech. Additionally, as the Macomb County Director of Human

32

Resources, Defendant McKinnon has the authority to make hiring and firing decisions. As a result, there is enough here to establish a causal connection against Defendant McKinnon.

Struckel also asserts that Defendant Ridella knew about her email that raised concerns about violations of health and safety laws. ECF No. 13, PageID.209, ¶ 85. On September 18, 2020, Struckel sent Defendant Ridella an email regarding her concerns about various health and safety law violations. ECF No. 13, PageID.207, ¶ 76. On September 20, 2020, Defendant Ridella then forwarded Struckel's email to Defendant McKinnon. ECF No. 13, PageID.209, ¶ 79. Then on September 21, 2020, Defendant Ridella sent Struckel an email informing her of her termination. ECF No. 13, PageID.210, ¶ 88.

Defendant Ridella does not address whether or not an adverse action—in full or in part—was taken against Struckel. Like the other defendants, he contends that Struckel's First Amendment Retaliation claim fails under the first prong—she did not engage in constitutionally protected speech.

For the same reason that there is enough to establish a causal connection between Defendant McKinnon and the retaliation, there is enough to establish a causal connection between the actions of Defendant Ridella and the retaliation as well. Unlike the defendant in *Hudson*, Defendant Ridella knew about Struckel's protected speech and then,

33

along with Defendant McKinnon, apparently made the decision to terminate Struckel because of it.

### c. Plaintiff has sufficiently plead a prima facie case under Michigan's Whistleblower Protection Act (WPA).

Struckel alleges that she engaged in a protected activity under the WPA when she reported her suspicions of illegal activity to Defendants. She further alleges that all Defendants are "public bodies" under WPA as evidenced by M.C.L. § 15.361(1)(d)(iii) and (iv).

Defendants collectively contend that Struckel's WPA allegations are vague and designed to implicate all of the Defendants without specifying which Defendant engaged in activity prohibited by the WPA. ECF No. 11, PageID.116. In Defendant McKinnon's separate Motion for Judgment on the Pleadings, he also contends that Struckel's Complaint only makes conclusory allegations. ECF No. 18, PageID.368. Specifically, Defendant McKinnon asserts that Struckel makes conclusory allegations that Defendant McKinnon knew of Struckel's protected activity, that he took adverse action thereon, and that he did so intentionally, deliberately, and willfully. ECF No. 18, PageID.368. For these reasons, Defendants contend that Plaintiff's claim must be dismissed.

To establish a prima facie case under Michigan's WPA a plaintiff must show that she (1) engaged in a protected activity during those times that have been referenced in the complaint, (2) was subjected to the claimed act of discrimination or discharge, and (3) the protected activity

caused the discharge or adverse employment action. *Cowell v. Am. Red Cross Genesee-Lapeer Chapter*, No. 12-15258, 2013 WL 5372805, at *4 (E.D. Mich. Sept. 25, 2013) (citing *Whitman v. City of Burton,* 493 Mich. 303, 831 N.W.2d 223, 229 (Mich. 2013)).

### i. Struckel engaged in a protected activity and as a result, was subject to an adverse employment action.

In this case, as discussed above in the analysis of Struckel's speech under her First Amendment retaliation claim, the Complaint adequately alleges that Struckel engaged in protected speech under the First Amendment when she reported her concerns regarding violations of health and safety laws to Defendants Spitz, Ridella, and McKinnon.

Struckel next asserts that being terminated was an adverse employment action taken against her. ECF No. 13, PageID.215, ¶ 111. This is not disputed. Rather, Defendants collectively contend that Struckel's WPA claim fails under the first prong—she did not engage in constitutionally protected speech. Moreover, Defendant Spitz also argues that Struckel has not stated a claim against him because he was not her employer and the WPA only applies to the plaintiff's employer. ECF No. 11, PageID.116.

As with the First Amendment retaliation claim, however, Struckel has plausibly alleged that each of the Defendants were involved in taking an adverse action against her that would deter a person of ordinary

firmness from continuing to engage in the protected conduct. Termination of employment constitutes an adverse action.

### ii. Plaintiff's protected activity likely caused her termination.

Given the temporal proximity between Struckel's protected activity and her termination, the fact that her complaint was made directly to Spitz and then to Ridella, and that there were no alleged performance or conduct problems that might justify termination, the Complaint sets out a plausible claim that she was terminated because she reported her suspicions of alleged illegal actions to Defendants Spitz, Ridella, and McKinnon. Additionally, all of the Defendants—perhaps with the exception of Defendant Spitz[9]—are a "public body" under the meaning of M.C.L. § 15.361(1)(d)(iii) and (iv).

### d. Struckel fails to state a viable public policy claim because it is duplicative of the First Amendment retaliation and WPA claims.

Plaintiff also claims that her firing was contrary to public policy. In general, under Michigan law, an employer-employee relationship is at-will unless the parties contracted otherwise. *Suchodolski v. Michigan*

---

[9] Defendant Spitz alleges that he was an independent contractor of Macomb County and was therefore incapable of legally taking any action against the plaintiff because he was not an employee of the County or the plaintiff's employer. However, under the contract between Macomb County and SPG, Defendant Spitz clearly directed Struckel's activities in the morgue, and also has authority to make discipline recommendations under this contract. The Complaint therefore makes a plausible claim that he influences  hiring and firing decisions.

*Consol. Gas Co.*, 412 Mich. 692, 694–95, 316 N.W.2d 710, 711 (1982). An exception to the at-will relationship arises, however, when "some grounds for discharging an employee are so contrary to public policy as to be actionable." *Id.* at 695. Public policy in this context is usually defined "in explicit legislative statements prohibiting the discharge, discipline, or other adverse treatment of employees who act in accordance with a statutory right or duty." *Id.* For instance, it is against public policy to terminate an employee based on her race or disability under various Michigan civil rights statutes. Further, under Michigan law, "[a] claim is viable only when there is not already a statutory prohibition against the conduct at issue." *Kinch v. Pinnacle Foods Grp., LLC*, 758 Fed. App'x 473, 480 (6th Cir. 2018).

In this case, in accordance with *Kinch*, Struckel already has claims under both the First Amendment retaliation under § 1983 and the Michigan WPA. *Kinch* states that a public policy claim "[i]s viable only when there is not already a statutory prohibition against the conduct at issue." *Kinch,* 758 Fed. App'x at 480. Here, the conduct at issue is being terminated in retaliation for making complaints about health and safety problems and not going along with the office environment that allowed such problems to continue. As a result, the public policy claim is duplicative of the First Amendment retaliation and WPA claims. And for that reason, Struckel's public policy claim must be dismissed.

Even if Struckel's public policy claim was not duplicative of the WPA claim, she still would not have a viable claim. In *Suchodolski,* the Michigan Supreme Court made clear the kinds of public policy mandates that may constitute a viable claim: *legislatively* enacted policies stating that it is contrary to public policy to terminate employees on the basis of certain protected characteristics. *Suchodolski,* 412 Mich. 692 at 695. Here, Struckel alleges violations of executive-branch regulations—Governor Whitmer's orders and department of health directives. These are not legislative enactments.

For this reason, the Court will dismiss the Michigan public policy violation claims as alleged in Count III. Because the preceding reasoning shows that amendment of this claim would be futile, Count III will be dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED THAT:**

1. Defendants' Motion to Dismiss Plaintiff's First Amendment retaliation (Count I) and WPA (Count II) claims is **DENIED.** ECF Nos. 11, 14.

2. Defendants' Motion to Dismiss Plaintiff's public policy claim under Count III of the Amended Complaint is **GRANTED**, and Count III is therefore **DISMISSED WITH PREJUDICE.** ECF Nos. 11, 14.

3. Defendant McKinnon's Motion for Judgment on the

Pleadings is **DENIED.** ECF No. 18.

**IT IS SO ORDERED.**

Dated: September 3, 2021          s/Terrence G. Berg

TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE